**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOSEPH WAREHAM, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 2: 13-cv-00188 |
| | ) | |
| v. | ) | District Judge Arthur J. Schwab |
| | ) | |
| PENNSYLVANIA DEPARTMENT OF | ) | Magistrate Judge Cynthia Reed Eddy |
| CORRECTIONS; MR. JOSEPH | ) | |
| MAZURKIEWICZ, MRS. LORI | ) | |
| KWISNEK, DR. JOSEPH MOLLURA, | ) | |
| PRISON HEALTH SERVICES, | ) | |
| MRS. SUSAN BERRIER, MR. ERIC | ) | |
| ARMEL, DR. MICHAEL HERBIK, AND | ) | |
| DR. DENNIS J. PHILLIPS, individually | ) | |
| and in their official capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully submitted that the Motion to Dismiss filed by Dr. Joseph Mollura, Prison

Health Services, and Dr. Michael Herbik (ECF No. 23) be granted in part and denied in part.

**II.     REPORT**

A.     Procedural History

Plaintiff, Joseph Wareham, is a prisoner in the custody of the Pennsylvania Department of

Corrections ("DOC").  He currently is incarcerated at the State Correctional Institution at Fayette,

Pennsylvania.  Plaintiff commenced this civil action against the following Defendants:

Pennsylvania Department of Corrections, Mr. Joseph Mazurkiewicz, Mrs. Lori Kwisnek, Mrs.

Susan Berrier, Mr. Eric Armel (hereinafter collectively referred to as the "DOC Defendants"),

Dr. Joseph Mollura, Prison Health Services ("PHS"), and Dr. Michael Herbik (hereinafter collectively referred to as the "Medical Defendants"), and Dr. Dennis J. Phillips. Plaintiff alleges that the Medical Defendants failed to provide appropriate medical treatment for pain associated with his pre-existing lower extremity problems and for injuries he sustained as a result of fall during his incarceration at SCI-Greensburg.

The Medical Defendants have filed the instant Motion to Dismiss, with brief in support, in which they seek to have all claims made against them dismissed for failure to state a claim. (ECF Nos. 23 and 24).[1] Plaintiff has filed a brief in opposition (ECF No. 30). The motion is ripe for disposition. For the reasons set forth below, it is recommended that the Motion to Dismiss be granted in part and denied in part.

B.    Standard of Review

A motion to dismiss pursuant Rule 12(b)(6) challenges the legal sufficiently of the complaint. When reviewing a motion to dismiss, the Court must accept all well-pleaded facts and allegations, and must draw all reasonable inferences therefrom in favor of the plaintiff. *Burtch v. Milberg Factors, Inc.,* 62 F.3d 212, 220 (3d Cir. 2011), *cert. denied*, -- U.S. --, 131 S. Ct. 1861 (2012) (citing *In re Ins. Brokerage Antitrust Litig.,* 618 F.3d 300, 314 (3d Cir. 2010)). However, as the Supreme Court of the United States made clear in *Bell Atlantic Corp. v. Twombly,* such "[f]actual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. 554, 555 (2007). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that, while the Complaint need not contain detailed factual allegations, it must

---

[1]   The DOC Defendants have filed an Answer (ECF No. 28) and Defendant Dr. Dennis Phillips

contain more than a "formulaic recitation of the elements" of a constitutional claim and must state a claim that is plausible on its face) (quoting *Twombly*, and providing further guidance on the standard set forth therein).

To determine the legal sufficiency of a complaint after *Twombly* and *Iqbal*, the United States Court of Appeals for the Third Circuit instructs that a district court must make a three-step approach when presented with a motion to dismiss for failure to state a claim. *Santiago v. Warminster Twp.,* 629 F.3d 121, 130 n.7 (3d Cir. 2010) (noting that although *Iqbal* describes the process as a "two-pronged approach," it views the case as outlining three steps) (citing *Iqbal*, 556 U.S. at 675). First, "the court must 'tak[e] note of the elements a plaintiff must plead to state a claim." *Id.* at 130 (quoting *Iqbal,* 556 U.S. at 675) (alteration in original). Second, the court "should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679). Third, "'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" *Id.* (quoting *Iqbal,* 556 U.S. at 679).

Courts generally consider the allegations of the complaint, attached exhibits, and matters of public record in deciding motions to dismiss. *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir. 1993). Factual allegations within documents described or identified in the complaint also may be considered if the plaintiff's claims are based upon those documents. *Id.* (citations omitted). In addition, a district court may consider indisputably authentic documents without converting a motion to dismiss into a motion for summary

has filed a Motion to Dismiss, which is pending (ECF No. 41).

judgment.  *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004); *Lum v. Bank of America*, 361 F.3d 217, 222 (3d Cir. 2004) (in resolving a motion to dismiss pursuant to Rule 12(b)(6), a court generally should consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim.").

A court must employ less stringent standards when considering pro se pleadings than when judging the work product of an attorney.  *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  In a section 1983 action, the court must liberally construe the pro se litigant's pleadings and "apply the applicable law, irrespective of whether a pro se litigant has mentioned it by name."  *Higgins v. Beyer*, 293 F.3d 683, 688 (3d Cir. 2002) (quoting *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999)).  *See also Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996) ("Since this is a § 1983 action, the [pro se] plaintiffs are entitled to relief if their complaint sufficiently alleges deprivation of any right secured by the Constitution.") (quoting *Higgins*, 293 F.3d at 688).  Notwithstanding this liberality, pro se litigants are not relieved of their obligation to allege sufficient facts to support a cognizable legal claim.  *See, e.g., Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378, (5th Cir. 2002); *Riddle v. Mondragon*, 83 F.3d 1197, 2102 (10th Cir. 1996).

Moreover, the United States Court of Appeals for the Third Circuit has held that, in civil rights cases, a court must give a plaintiff the opportunity to amend a deficient complaint - regardless of whether the plaintiff requests to do so - when dismissing a case for failure to state a claim, unless doing so would be inequitable or futile.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc*., 482 F.3d 247, 251 (3d Cir. 2007).

In addition, in the Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), Congress adopted major changes affecting federal actions brought by prisoners in an effort to curb the increasing number of frivolous and harassing law suits brought by persons in custody. Pertinent to the case at bar is the authority granted to federal courts for *sua sponte* screening and dismissal of prisoner claims. Specifically, Congress enacted the provision at 28 U.S.C. § 1915A, entitled "Screening," which requires the court to review complaints filed by prisoners seeking redress from a governmental entity or an officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). If the complaint is "frivolous, malicious, or fails to state a claim upon which relief can be granted," or "seeks monetary relief from a defendant who is immune from such relief," the court must dismiss the complaint. 28 U.S.C. § 1915A(b).

In addition, Congress significantly amended Title 28 of the United States Code, section 1915, which establishes the criteria for allowing an action to proceed in forma pauperis (IFP), i.e., without prepayment of costs. Section 1915(e) (as amended) requires the federal courts to review complaints filed by persons that are proceeding IFP and to dismiss, at any time, any action that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

Further, the PLRA substantially amended the Civil Rights of Institutionalized Persons Act, 42 U.S.C.A. § 1997e. In this regard, the PLRA amended section 1997(c) to require the court "on its own motion or on the motion of a party" to dismiss any action brought by a prisoner with respect to prison conditions under 42 U.S.C. § 1983 if the action is "frivolous, malicious, fails to

state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief." *See* 42 U.S.C. § 1997e(c)(1).

Plaintiff is considered a "prisoner" as that term is defined under the PLRA, *see* 28 U.S.C. §§ 1915(h); 1915A(c), and he has been granted leave to proceed IFP in this action (ECF No. 5). In addition, his claims concern prison conditions. Thus, Plaintiff's allegations must be reviewed in accordance with the directives of the PLRA.

C.     Background

1. *Overview of Events at SCI-Greensburg*

On February 3, 2009, Plaintiff was transferred from the State Correctional Institute ("SCI") at Waymart to SCI-Greensburg. Plaintiff alleges that he was already "physically disabled" and walked with a cane and had atrophy in his left leg. In May 2009, he was officially listed on the "Inmates with Disability List" and had Bottom Bunk / Bottom Tier status due to his disability. According to the Complaint, SCI-Greensburg is not handicapped accessible and as such, all inmates must "climb up and down double flights of long and steep stairways in order to access the chow hall, yard, gym, barber shop, commissary, laundry, clothing issue and property room." Complaint at ¶ 17.

In May of 2010, Plaintiff began to experience problems with his left knee, which "caused severe pain in his left knee and left hip." *Id*. at ¶ 19. Between May 2010 and August 2011, Plaintiff was repeatedly prescribed medications and provided treatment to help alleviate his complaints of pain.

On June 14, 2010, Plaintiff informed Dr. Mollura that he had "fallen down on several occasions when his left knee had given out." *Id*. at ¶ 23. In August of 2010, Plaintiff told Brian Hyde, a Medical Department Official, that he had been "forced to decline some meals . . . rather than endure the pain and difficulty of the stairways." *Id*. at ¶ 32. Plaintiff was thereafter placed on the Cell Feed list so that his meal trays would be delivered to him rather than having to traverse the stairways.

According to the Complaint, on September 1, 2010, Plaintiff saw Dr. Mollura and told him that before he had been placed on Cell Feed, he had missed meals due to the pain and difficulty of climbing the stairways, and that he continued to decline "going to the yard sometimes due to the stairways and that he has fallen at various locations throughout the facility due to his left knee giving out and that he almost fell down the stairways on several occasions." *Id*. at ¶ 36. Plaintiff then asked Dr. Mollura to grant him a "medical transfer" to another facility where there are no stairs, but Dr. Mollura replied that "he does not issue transfers." *Id.*

Dr. Mollura ordered physical therapy, but Plaintiff's leg continued to "deteriorate." On April 27, 2011, Plaintiff wrote a letter to the officials at SCI-Greensburg "pleading with them for a permanent medical transfer so that he would not have to climb the long and steep stairways . . . ." *Id*. at ¶59.

On June 2, 2011, Plaintiff was informed that the medical department removed him from the Cell Feed list and, as a result, he again was required to use the stairs to the go the chow hall. Plaintiff "verbally pleaded" with the Medical Department to put him back on Cell Feed, but his

pleas were rejected and he had to "take his chances by climbing up and down the long and steep stairways an additional three times per day."

On August 1, 2011, Plaintiff's fears of falling on the stairways became a reality. According to the Complaint, as he was returning from the commissary and was halfway up a second flight of "the exceptionally steep, single-file stairway," his "left knee gave out [and] Plaintiff went down fast and hard . . . landing hard on the landing between the first and second flight." *Id.* at ¶ 74. Plaintiff was transported by ambulance to Westmoreland Hospital, where it was determined that Plaintiff had suffered a sprain in his left knee and contusions on his back.

On August 8, 2011, Plaintiff was placed on medical cell restriction by the SCI-Greensburg Medical Department. Five days later, on August 11, 2011, Plaintiff was transferred to SCI-Fayette, a facility which does not require all inmates to climb up and down stairs.

2. *Overview of Events at SCI-Fayette*

At SCI-Fayette, Plaintiff was placed in a wheelchair and housed in a handicap cell. The Complaint details that Plaintiff has repeatedly been seen and treated for his knee and back complaints. However, Plaintiff alleges that upon his arrival at SCI-Fayette his "long-standing" prescription for a double mattress was cancelled. Plaintiff also alleges that Dr. Herbik refused to refer him for a second orthopedic consultation to determine what type of knee surgery would most benefit Plaintiff, even though Dr. Phillips, the first orthopedic physician had been referred to, had expressed the belief that a second opinion was needed.

D.    Discussion

To state a claim under 42 U.S.C. § 1983, a plaintiff must meet two threshold requirements.  He must allege:  1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States.  *West v. Atkins*, 487 U.S. 42 (1988); *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-331 (1986).

There is no question that the Medical Defendants were acting under color of state law with respect to the actions alleged in the Complaint and Plaintiff has alleged that the Medical Defendants acted with deliberate indifference when they failed to provide appropriate medical treatment for his complaints of pain in his knee and back.  These claims invoke liability under the Eighth Amendment, which provides as follows:

> Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

U.S. Const. amend. VIII.

The Eighth Amendment protects individuals against the infliction of "cruel and unusual punishments."  This protection, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement.  In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

1.      *Eighth Amendment Claims*

Plaintiff's Complaint recounts in great detail what happened to him at SCI-Greensburg and at SCI-Fayette.[2]  Distilled to its essence, Plaintiff alleges that the Defendants failed to provide him with appropriate medical treatment for  pain associated with pre-existing lower extremity problems and for injuries he sustained as a result of a fall during his incarceration at SCI-Greensburg.

The three Medical Defendants are: Dr. Mollura - the Medical Director at SCI-Greensburg, Complaint at ¶ 5; PHS - a private corporation that contracts with the Commonwealth to provide medical services to prison inmates, Complaint at ¶ 8; and Dr. Michael Herbik - the Medical Director at SCI-Fayette, who also serves as regional medical director for PHS, Complaint at ¶ 11. The Medical Defendants argue that the Complaint should be dismissed for failure to state a claim against them because there are insufficient allegations of deliberate indifference to support § 1983 liability.

To state an Eighth Amendment violation in the context of medical treatment, an inmate must prove two elements: 1) plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need.  *Estelle v. Gamble*, 427 U.S. 97, 107 (1976).  The first showing requires the court to determine whether the medical need was objectively "sufficiently serious."  A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would

_____

[2] In considering a motion to dismiss for failure to state a claim, the Court takes all well pleaded allegations as true, construes the complaint in the light most favorable to the plaintiff, and determines whether, under any reasonable reading of the pleadings, the plaintiff may be entitled

easily recognize the necessity for a doctor's attention. *Gaudreault v. Municipality of Salem*, 923 F.2d 203, 208 (1st Cir. 1990); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). The second prong requires a court subjectively to determine whether the officials acted with a sufficiently culpable state of mind. Deliberate indifference may be manifested by an intentional refusal to provide care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993).

With these standards in mind, the Court turns to Plaintiff's allegations against the Medical Defendants. For purposes of the motion to dismiss, the Medical Defendants assume that Plaintiff's medical needs were serious. However, they argue that Plaintiff has not alleged enough facts that would permit a jury to conclude that the Medical Defendants subjectively acted with a sufficiently culpable state of mind necessary for Plaintiff's deliberate indifference claim to survive.

Accepting Plaintiff's well pleaded facts as true and after drawing all reasonable inferences in Plaintiff's favor, the Court analyzes each Defendant separately to determine "whether the facts alleged in the complaint are sufficient to show that the plaintiff has a plausible claim for relief." *Iqbal*, 556 U.S. at 678.

    a.    *Dr. Joseph Mollura*

Defendants contend that dismissal of Plaintiff's deliberate indifference claim against Defendant Dr. Mollura is appropriate because it arises from a mere disagreement with Dr.

---

to relief. *Colburn v. Upper Darby Twp.*, 838 F.2d 633, 665 (3d Cir. 1998).

Mollura concerning medical treatment. According to the Medical Defendants, Plaintiff was repeatedly given medical attention by Dr. Mollura. For example, he received several knee braces, corticosteroid injections, and pain-relieving tablets, was prescribed anti-inflammatory capsules and various other medications, and was prescribed physical therapy treatment, all in an attempt to alleviate his pain.

Notwithstanding the medical attention Plaintiff received, the Court finds that at this early stage of the litigation Plaintiff's Complaint contains sufficient facts to support a cognizable deliberate indifference claim against Dr. Mollura. First, as stated *supra*, Defendants do not dispute that Plaintiff has satisfied the objective component of a deliberate indifference claim.

Plaintiff has also satisfied the subjective component of a deliberate indifference claim because he effectively alleges that while Dr. Mollura knew of Plaintiff's medical history and his serious medical needs, he ignored Plaintiff's medical impairments by possibly placing him at risk of greater injury by refusing to recommend a medical transfer.

It is beyond dispute that prison and jail officials are obligated to take all reasonable precautions to protect inmates from known dangers. *See Davidson v. Cannon*, 474 U.S. 344 (1986). Plaintiff alleges, *inter alia*, that but for Dr. Mollura's failure to grant him a medical transfer so that he could avoid traversing the stairs and the "long and steep hallways" at SCI-Greensburg, he likely would not have fallen and been injured.

Construed in a light most favorable to Plaintiff, the Court finds that the claims and allegations against Dr. Mollura, pursuant to § 1983 and the Eighth Amendment, are sufficient to survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court

recognizes that discovery may well reveal that the alleged conduct of Dr. Mollura does not give rise to a deliberate indifference claim, but at this stage of the litigation, the allegations of the Complaint must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor.

      b.    *Prison Health Systems ("PHS")*

An entity such as PHS may be liable under § 1983 only if it adopted a policy or custom that deprived Plaintiff of his constitutional rights. *Monell v. Department of Social Servs. of New York*, 436 U.S. 658, (1978); *Natale v. Camden County Corr. Facility*, 318 F.3d 575, 583 (3rd Cir. 2003) (applying *Monell* to Prison Health Services). The Court of Appeals for the Third Circuit has identified "three situations where acts of a government employee may be deemed to be the result of a policy or custom of the governmental entity for whom the employee works, thereby rendering the entity liable under § 1983." *Natale*, 318 F.3d at 584.

> [1] The first is where the appropriate officer or entity promulgates a generally applicable statement of policy and the subsequent act complained of is simply an implementation of that policy. [2] The second occurs where no rule has been announced as policy but federal law has been violated by an act of the policymaker itself. [3] Finally, a policy or custom may also exist where the policymaker has failed to act affirmatively at all, though the need to take some action to control the agents of the government is so obvious, and the inadequacy of existing practice so likely to result in the violation of constitutional rights, that the policymaker can reasonably be said to have been deliberately indifferent to the need.

*Id.* (internal quotations and citations omitted).

Here, Plaintiff alleges that on three separate occasions, Dr. Mollura referred him for a surgical evaluation by an orthopedic surgeon, yet it took more than seven months before the evaluation occurred. Plaintiff alleges that the "entire seven month [delay], was the result of a

dispute and its aftermath.  In other words, the denial or delay to provide Plaintiff with an orthopedic evaluation within a reasonable amount of time was for non-medical reasons."  P's Response at 10.

The Court finds that Plaintiff has stated a "plausible claim for relief" against PHS at this early stage of the proceedings. It is possible that PHS knew its usual policy or practice was not effective because of a dispute, *e.g.*, a non-medical reason, and did not make a decision to act, which resulted in a seven month delay for an orthopedic examination, an examination their physician deemed was needed on three separate occasions.

c.    *Dr. Michael Herbik*

According to the Complaint, Plaintiff's allegations show that he received a substantial amount of medical treatment during his confinement at SCI-Fayette.  However, Plaintiff asserts that Dr. Herbik violated Plaintiff's Eighth Amendment rights when he (i) refused to renew Plaintiff's "prescription" for a double mattress, and (ii) refused to send Plaintiff for a second opinion.

As to his first claim, the Complaint reflects that Plaintiff "ha[d] a prescription for a double mattress which was ordered by an orthopedic after extensive testing and that, after having it for more than ten (10) years straight, through four (4) successive institutions," and upon his transfer to SCI-Fayette, Dr. Herbik cancelled the prescription. Complaint, at ¶ 106.

Plaintiff was first given authorization for a double mattress on December 19, 2000, based upon the "recommendations of Dr. Skerl and the orthopedic surgeon."  Pl's Response, Exh. E (ECF No. 30-5).   On September 15, 2011, almost eleven (11) years after the authorization was

initially given, Dr. Herbik examined Plaintiff and determined that he no longer needed a double mattress. Further, according to the Complaint, Dr. Herbik told Plaintiff that "if he can not get by with one mattress then he can come stay in the infirmary." Complaint, at ¶ 109.

Courts give "considerable latitude to prison medical authorities in the diagnosis and treatment of the medical problems of inmate patients. Courts will 'disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment . . . (which) remains a question of sound professional judgment." ' *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 763 (3d Cir. 1979) (alterations in the original) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

Plaintiff's allegations reveal that Dr. Herbik examined Plaintiff and found that he no longer needed a double mattress. Further, Dr. Herbik offered that Plaintiff could stay in the infirmary if the one mattress proved problematic for him. Accordingly, the Court finds that Plaintiff has set forth no allegation that Dr. Herbik acted with deliberate indifference to a serious medical condition when Dr. Herbik refused to renew Plaintiff's authorization for a double mattress.

Likewise, Plaintiff's second claim against Dr. Herbik also fails. Plaintiff contends that Dr. Herbik opted for less costly treatment by prescribing a knee brace instead of sending Plaintiff for a second opinion regarding potential knee surgery. "Neither persons who are incarcerated nor persons in the free world have a constitutional right to second opinions about their medical conditions." *Harris v. Thigpen*, 941 F.2d 1495 (11th Cir. 1991). Dr. Herbik's refusal to provide Plaintiff with a second medical opinion does not evince "unnecessary and wanton infliction of

pain." *See Estelle*, 429 U.S. at 104. While an intentional refusal to provide any medical treatment to an inmate suffering from a serious medical need manifests deliberate indifference and is actionable under the Eighth Amendment, the Eighth Amendment does not require that a prisoner receive every medical treatment that he requests or that is available elsewhere. A disagreement as to the appropriate choice of medical treatment does not give rise to a constitutional violation because the "right to be free from cruel and unusual punishment does not include the right to treatment of one's choice." *Layne v. Vinzant*, 657 F.2d 468, 473 (1st Cir. 1981). Mere disagreements over medical judgment does not state Eighth Amendment claims as there are typically several acceptable ways to treatment an illness. *Young v. Quinlan,* 960 F.2d 351, 358 n.18 (3d Cir. 1992).

In the case at bar, Plaintiff has set forth no allegations that Dr. Herbik acted with deliberate indifference to Plaintiff's serious medical needs for purposes of imposing liability under the Eighth Amendment's prohibition against cruel and unusual punishment. Thus, the claims against Dr. Herbik should be dismissed on the basis that Plaintiff's allegations fail to state a claim upon which relief may be granted under 42 U.S.C. § 1983.

2. *Fourteenth Amendment Claim*

In addition to his Eighth Amendment claims, Plaintiff also has brought a Fourteenth Amendment claim against Dr. Mollura and PHS. He describes his claim as follows:

> [The] acts and/or omissions of Defendant Mollura forced Plaintiff to remain at SCI-Greensburg, and, in a 'state of danger' climb those stairways until danger

struck. This clearly violated Plaintiff's right to be free from 'state created danger.'

P's Resp. at 5. The Medical Defendants contend that Plaintiff's Fourteenth Amendment claim should be dismissed as it is duplicative of his Eighth Amendment claim.

The Court agrees with the Medical Defendants and finds that Plaintiff's Fourteenth Amendment claim is foreclosed by Supreme Court precedent. "Where a particular amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing [a plaintiff's] claims.' " *Albright v. Oliver*, 510 U.S. 266, 273 (1994) (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)).

Here, Plaintiff has attempted to raise a claim under the Eighth and Fourteenth Amendments against Dr. Mollura and PHS based on the same conduct - i.e., "Defendant Mollura forced Plaintiff to remain at SCI-Greensburg," where he was injured when he fell in a stairway. Because the Eighth Amendment provides an explicit source of protection for deliberate indifference to serious medical needs, Plaintiff's claim is preempted by the Eighth Amendment and should not be analyzed as a substantive due process claim under the Fourteenth Amendment. Accordingly, Plaintiff's Fourteenth Amendment claims fails as a matter of law.

3.      *Statute of Limitations*

The Medical Defendants argue that because Plaintiff's request to proceed *in forma pauperis* was filed on February 5, 2013, any claims prior to February 5, 2011 are barred by the applicable Pennsylvania two year statute of limitations for personal injury actions.

The general rule is that a complaint is considered filed when the filing fee is paid or the request to proceed *in forma pauperis* is granted. *See Hughes v. Smith,* 237 Fed. Appx. 756, 759 (3d Cir. 2007) (citing *McDowell v. Del. State Police,* 88 F.3d 188, 191 (3d Cir. 1996)). The filing of an *in forma pauperis* ("IFP") application tolls the statute of limitations until leave to proceed IFP is granted or denied. *Richardson v. Diagnostic Rehab. Ctr.*, 836 F. Supp. 252, 254 (E.D. Pa. 1993).

However the United States Supreme Court has created an exception to this general rule in the form of the "prisoner mailbox rule," which provides that an inmate's pleadings are deemed filed at the moment he delivers the documents to prison officials to be mailed, and not the date the documents were actually filed in court. *Houston v. Lack*, 487 U.S. 266, 275–76 (1988); *see also Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998) (explaining that "a *pro se* prisoner's . . . petition is deemed filed at the moment he delivers it to prison officials for mailing"). Although this rule has typically been applied in circumstances involving habeas petitions, courts within the Third Circuit have extended this rule to other contexts, including § 1983 claims. *See White v. Pa. State Police*, 408 Fed. App'x. 521, 522 (3d Cir. 2010) (finding that a prisoner receives the benefit of the mailbox rule for a § 1983 complaint).

Moreover, when applying the prisoner mailbox rule, many district courts will use the date the documents were signed as the presumed delivery date in cases where there is no clear record of delivery to prison officials. *Howard v. Masteron*, No. 06–5632, 2009 WL 5184476, at *1 n. 2 ("Pursuant to the prison mailbox rule . . . [the] documents [are] filed on the date [the plaintiff] signed them.") (*citing Longenette*, 322 F.3d at 761).

In this case, Plaintiff has provided the Court with the date he delivered his IFP application to the prison officials, January 29, 2013. *See* P's Resp., Exh. A. While the IFP application was not officially docketed by the Court until February 5, 2013, pursuant to the prisoner mailbox rule, Plaintiffs' IFP application and Complaint are considered filed on January 29, 2013. Accordingly only those claims that accrued prior to January 29, 2011, are barred by the applicable statute of limitations.

4.    *Punitive Damages*

The Medical Defendants argue that Plaintiff's claims for punitive damages against the Medical Defendants should be dismissed because the Complaint fails to plead a sufficient factual basis for an award of punitive damages.

In an action under § 1983, punitive damages are permitted only if a defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the protected constitutional rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983). It may well be that discovery will reveal that the alleged conduct of the Medical Defendants was not motivated by evil motive or intent or involved reckless or callous indifference to the protected constitutional rights of Plaintiff. However, until such time, the Court finds that Plaintiff may maintain his claim for punitive damages against the Medical Defendants.

## III.     CONCLUSION

For all the foregoing reasons, it is recommended that the Motion to Dismiss filed by the Medical Defendants be granted in part and denied in part.  As to Plaintiff's claims against Dr. Herbik, the Court concludes that amendment would be futile and the claims against Dr. Herbik should be dismissed with prejudice.  On the other hand, it is not beyond doubt that the Plaintiff could prove some set of facts that would entitle him to relief with respect to Dr. Mollura and PHS.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until **July 29, 2013**, to file objections. Failure to timely file objections will constitute a waiver of any appellate rights.  *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).  Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.


_s/ Cynthia Reed Eddy_
Cynthia Reed Eddy
United States Magistrate Judge

Dated:  July 11, 2013

cc:     JOSEPH WAREHAM
         AF-5939
         SCI Fayette
         Box 9999
         LaBelle, PA 15450-0999

         Mary Lynch Friedline
         Office of Attorney General
         Email: mfriedline@attorneygeneral.gov

J. Eric Barchiesi
Eisenberg & Torisky
Email: eric.barchiesi@aig.com

Christopher E. Ballod
Marshall Dennehey Warner Coleman & Goggin
Email: ceballod@mdwcg.com
Steven J. Forry
Marshall, Dennehey, Warner, Coleman & Goggin
Email: SJForry@mdwcg.com