**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| JOSEPH WAREHAM, ) | |
| ) | Civil Action No. 2: 13-cv-00188 |
| Plaintiff, ) | |
| ) | |
| v. ) | District Judge Arthur J. Schwab |
| ) | |
| PENNSYLVANIA DEPARTMENT OF ) | Magistrate Judge Cynthia Reed Eddy |
| CORRECTIONS, et al., ) | |
| ) | |
| Defendants. ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

For the reasons set forth below, it is respectfully submitted that the Motion for Summary Judgment (ECF No. 84) filed by Defendants Pennsylvania Department of Corrections, Joseph Mazurkiewicz, Lori Kwisnek, Susan Berrier, and Eric Armel be granted in part and denied in part. It is recommended that the motion for summary judgment be granted as to Plaintiff's claims brought under 42 U.S.C. § 1983, but denied as to Plaintiff's claims brought under the Americans with Disabilities Act.

**II.    REPORT**

A.  Relevant Procedural History

At the time that Plaintiff, Joseph Wareham, initiated this lawsuit, he was a prisoner in the custody of the Pennsylvania Department of Corrections ("DOC"), incarcerated at the State Correctional Institution at Fayette, Pennsylvania.  On November 7, 2013, Plaintiff notified the Court that he had been released from prison.  (ECF No. 73).

Plaintiff has brought this suit under: (1) 42 U.S.C. § 1983, claiming that his Eighth and Fourteenth Amendment rights were violated when he was denied appropriate medical care while

incarcerated at both SCI-Greensburg and SCI-Fayette, and when his request for a medical transfer was denied, and (2) the Americans with Disabilities Act ("ADA"), claiming that, while incarcerated at SCI-Greensburg, he was denied benefits and services as a result of his disability and that Defendants failed to make a reasonable accommodation for his disability.

Named as Defendants are the DOC and various individuals employed by the DOC, to wit: Mr. Joseph Mazurkiewicz, Superintendent of SCI-Greensburg; Mrs. Lori Kwisnek, the Corrections Health Care Administrator ("CHCA") at SCI-Greensburg; Mrs. Susan Berrier, the CHCA at SCI-Fayette; Mr. Eric Armel, the Deputy of Centralized Services at SCI-Fayette[1] (hereinafter collectively referred to as the "DOC Defendants"); Prison Health Services ("PHS"), the contracted medical vendor with DOC; Dr. Joseph Mollura, the medial director of SCI-Greensburg, and Dr. Michael Herbik, the medical director of SCI-Fayette, (hereinafter collectively referred to as the "Medical Defendants"), and Dr. Dennis J. Phillips, a physician who by virtue of his contract with PHS saw Plaintiff as a patient at Allegheny General Hospital.

Plaintiff seeks compensatory damages in excess of $150,000, as well as punitive damages and declaratory judgment "that the acts and omissions described [in the Complaint] violated Plaintiff's rights under the ADA [and] the Constitution." (ECF No. 6 at ¶¶ 200-02).

The DOC Defendants filed an Answer on May 7, 2013. The Medical Defendants filed a Motion to Dismiss. By Memorandum Order of August 27, 2013 (ECF No. 58), which adopted the Report and Recommendation of July 11, 2013 (ECF No. 47), the motion was granted in part and denied in part, resulting in the claims against Dr. Mollura and PHS remaining, but the claims against Dr. Herbik being dismissed. Dr. Mollura and PHS filed their Answer on September 27, 2013. Defendant Phillips filed a separate Motion to Dismiss. By Memorandum Order of

---

[1] As Deputy of Centralized Services, the Medical Department at SCI-Fayette falls under Defendant Armel's general authority. Answer at ¶ 10.

October 4, 2013 (ECF No. 68), which adopted the Report and Recommendation of September 3, 2013 (ECF No. 59), the motion was granted in its entirety and all claims against Dr. Phillips were dismissed. (ECF No. 68).

The DOC Defendants have filed the instant Motion for Summary Judgment, with brief in support (ECF Nos. 84 and 85).[2] Plaintiff has filed a Brief in Opposition to Defendants' Motion for Summary Judgment (ECF No. 97). The issues have been fully briefed and the factual record has also been thoroughly developed. *See* ECF Nos. 86, 87-1, 96. The motion is ripe for disposition. For the reasons set forth below, it is recommended that the Motion to Dismiss be granted in part and denied in part.

B. Relevant Factual History

1. Plaintiff's disability and medical conditions

On February 3, 2009, Plaintiff was transferred from the State Correctional Institute ("SCI") at Waymart to SCI-Greensburg. Plaintiff alleges that he was already "physically disabled" and walked with a cane. The medical record evidence reflects that Plaintiff suffered from atrophy in his lower extremity and overextension of his knee due to a prior spinal cord injury and long-standing cervical and thoracic disc disease. (ECF No. 87-1, Exhibit 1, ¶ 7). In May 2009, he was officially listed on the "Inmates with Disability List." (Id. at ¶ 8). According to the Complaint, SCI-Greensburg is not handicapped accessible and as such, all inmates must "climb up and down double flights of long and steep stairways in order to access the chow hall, yard, gym, barber shop, commissary, laundry, clothing issue and property room." (ECF No. 6 at ¶ 17).

---

[2] The medical defendants, Dr. Joseph Mollura and Prison Health Services, also have filed a Motion for Summary Judgment (ECF No. 88), which the Court has addressed in a separate Report and Recommendation filed contemporaneously herewith.

On May 10, 2010, Plaintiff developed a new or exasperated injury to his knee, which "caused severe pain in his left knee and left hip." (ECF No. 6 at ¶ 19, ECF No. 87-1 Exhibit 1 at ¶ 9). Between May 2010 and August 2011, while incarcerated at SCI Greensburg, Plaintiff was treated and evaluated repeatedly by the medical department and Dr. Joseph Mollura. During that time, he was often on the medical "cell feed" list, which provides that meals be brought to inmates in their cells, rather than requiring them to walk to the dining hall.

    2.  <u>Plaintiff's attempts to secure a transfer from SCI-Greensburg</u>

Because of Plaintiff's difficulty traversing the stairs in SCI-Greensburg, Plaintiff embarked on a campaign in order to secure a transfer to another prison facility. In September of 2010, Plaintiff requested that Dr. Mollura transfer Plaintiff to a facility that does not require the use of stairways, but was informed that Dr. Mollura does not issue transfers. (ECF No. 6 at ¶ 36). Thereafter, Plaintiff continued his pursuit of a transfer, often addressing letters and grievances to Dr. Mollura , as well as other prison officials. (ECF No. 6, ¶¶ 47, 48, 62; ECF No. 87-1, pages 7 and 212). On January 11, 2010, Plaintiff orally requested medical transfer from Defendant Kwisnek. (ECF No. 6 ¶ 47). Plaintiff alleges that Defendant Kwisnek summarily denied this request (ECF No. 6 ¶ 48), though Defendants assert that they were in the process of advocating for medical transfer, and that they communicated those measures to Plaintiff. (ECF No. 85 page 7).

On April 27, 2011, Plaintiff wrote a letter to Defendant Kwisnek and Dr. Mollura requesting medical transfer. (ECF No. 87-1 Exhibit 11 page 212). In that letter, Plaintiff stated that "[his] lower left extremity is becoming weaker and the many stairs here at SCI Greensburg are becoming increasingly difficult for me to go up and down." (<u>Id</u>.) Defendant Kwisnek responded to the April 27 letter on May 23, indicating that the possibility of transfer would be

evaluated. (ECF No. 6 ¶ 62). As will be discussed *infra,* Plaintiff was not transferred to a different facility until August 11, 2011, after he had fallen on the stairs at SCI-Greensburg.

       3.  <u>Plaintiff's challenges at SCI-Greensburg in receiving meals and services</u>

Plaintiff alleges that he was "forced to decline some meals in the chow hall, some yards and so forth rather than endure the pain and difficulty of the stairways." (ECF No. 6 ¶ 32). As an accommodation, Plaintiff was placed on "cell feed status for [four] weeks starting 8/24/10" (ECF 86 ¶ 15). "This enabled plaintiff to receive his meal trays in his cell and excused him from going to the dietary on the first level." (<u>Id</u>.). After the expiration of the four (4) week Cell Feed order, Plaintiff was again required to walk to the dietary, albeit with permission to use a "handicap table," which "was a table for inmates with special needs or appliances, such as canes." (<u>Id</u>. at ¶ 29). After some interval, the Cell Feed accommodation was reinstated, but then revoked again, on June 2, 2011. (ECF No. 87-1 Exhibit 21, page 217). Plaintiff sent a letter to Defendants Kwisnek and Mazurkiewicz regarding his removal from the list (<u>Id</u>.). Some time later, though the letter is incorrectly dated, Defendant Kwisnek responded and reinstated cell feed. (ECF No. 78-1 Exhibit 12 page 216).

On July 2, 2011, the cell feed order was discontinued after the medical department received a report from Dietary that Plaintiff had walked to dietary to complain about not receiving a meal tray in his room. (ECF No. 6 ¶ 67). Plaintiff verbally requested to be reinstated, but the medical department denied his request. (ECF No. 6 ¶ 68). On July 19, 2011, Plaintiff sent a letter to Defendant Kwisnek and Dr. Mollura requesting reinstatement on the Cell Feed list. (ECF No. 87-1 Exhibit 13 page 221). Defendant Kwisnek responded to that letter immediately: "First, in regards [sic] to your cell feed issue, and as previously informed, you had

[sic] been 'duly informed' that the cell feed order would not be rewritten." (ECF No. 87-1 Exhibit 13 page 229).

On July 29, 2011, Plaintiff orally requested of Defendant Mazurkiewicz that Plaintiff be reinstated on the Cell Feed list. Defendant Mazurkiewicz indicated that he would investigate the issue. (ECF No. 6 ¶ 73). Indeed, that day, Defendant Mazurkiewicz requested via email that Plaintiff be temporarily reinstated on the Cell Feed list pending further investigation. (ECF No. 87-1 Exhibit 10, page 209).

On August 1, 2011, "before steps could be taken to implement [Mazurkiewicz's] order [of reinstating cell feed] and notify dietary and security," Plaintiff fell on the stairs in SCI-Greensburg. (ECF No. 87-1 Exhibit 16 ¶ 10). "Plaintiff was almost halfway up the second flight [of stairs] when . . . his left knee gave out. Plaintiff went down fast and hard . . . landing between the first and second flight." (ECF No. 6 ¶ 74). After the fall, Plaintiff was transported to the hospital, where it "was determined that Plaintiff had suffered a new sprain in his left knee and contusions on his back. They said nothing was broken and discharged Plaintiff to be returned to SCI-Greensburg." (Id. at ¶ 76).

On August 8, 2011, Plaintiff was placed on medical cell restriction and began utilizing a wheel chair. (Id. at ¶ 84).

### 4. Plaintiff's transfer to SCI-Fayette and his request for a double mattress

On August 13, 2011, Plaintiff was transferred to SCI-Fayette. (ECF No. 87-1 Exhibit 16 ¶ 13). Upon transfer, Plaintiff requested that Defendants Berrier and Armel arrange to provide him with a double mattress, as had been "prescri[bed] for the past ten (10) years." (ECF No. 6 ¶ 100). On September 15, 2011, after an evaluation by Dr. Herbik, Plaintiff requested that Dr. Herbik arrange to provide Plaintiff with a double mattress. (ECF No. 6 ¶ 109). "Dr. Herbik told

Plaintiff that he no longer requires a double mattress and that if can not get by with one mattress then he can come stay in the infirmary." (Id.). On November 7, 2011, Defendant Berrier denied, in writing, Plaintiff's request for a double mattress. "The MD determined you have no need for double mattress. Egg crates are restricted to the infirmary." (ECF No. 87-1 Exhibit 15 page 232). Further, Mr. K. Randolph, Corrections Registered Nurse Supervisor, concurred that "[t]here is no medical evidence that substantiates any long term benefits for a second mattress or egg create [sic] mattress." (ECF No. 87-1 Exhibit 15 page 234). Relying on the determinations of Dr. Herbik and other medical professionals, Defendants Berrier and Armel did not arrange for a second mattress for Plaintiff. (ECF No. 87-1 Exhibit 15 page 237).

C.  Standard of Review for Motion for Summary Judgment

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986); Andreoli v. Gates, 482 F.3d 641, 647 (3d Cir. 2007); UPMC Health System v. Metropolitan Live Ins. Co., 391 F.3d 497, 502 (3d Cir. 2004).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Fed.R.Civ.P. 56(e); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-61 (3d Cir. 1989) (the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e. depositions, answers to interrogatories and admissions) to meet his burden of proving

elements essential to his claim. Celotex, 477 U.S. at 322. *See also* Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). The non-moving party "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue." Garcia v. Kimmell, 381 F. App'x 211, 213 (3d cir. 2010) (quoting Podobnik v. U.S. Postal Serv., 409 F.3d 584, 594 (3d Cir. 2005)).

When considering a motion for summary judgment, the Court is not permitted to weigh the evidence or to make credibility determinations, but is limited to deciding whether there are any disputed issues and, if there are, whether they are both genuine and material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986). The Court must consider the evidence, and all reasonable inferences which may be drawn from it, in the light most favorable to the non-moving party. Batsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). *See also* El v. SEPTA, 479 F.3d 232, 238 (3d Cir. 2007).

D.     Discussion and Analysis

1.   Claims Brought Pursuant to 42 U.S.C. § 1983

Plaintiff's constitutional claims are brought pursuant to 42 U.S.C. § 1983, which provides in relevant part as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . .

The Supreme Court of the United States has held that § 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979). "The first step in any such claim is to identify the specific

constitutional right allegedly infringed." <u>Albright v. Oliver,</u> 510 U.S. 266, 271 (1994). <u>See also</u> <u>Baker</u>, 443 U.S. at 140; <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).

Further, "[c]ertain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn." <u>Soldal v. Cook County, Illinois</u>, 506 U.S. 56, 70 (1992).

A plaintiff must meet two threshold requirements in order to state a claim under § 1983: 1) that the alleged misconduct was committed by a person acting under color of state law; and 2) that as a result, he was deprived of rights, privileges, or immunities secured by the Constitution or laws of the United States. <u>West v. Atkins</u>, 487 U.S. 42 (1988); <u>Parratt v. Taylor</u>, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, <u>Daniels v. Williams</u>, 474 U.S. 327, 330-31 (1986).

To establish personal liability against a defendant in a § 1983 action, that defendant must have *personal* involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*. <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976). Accordingly, individual liability can be imposed under § 1983 only if the state actor played an "affirmative part" in the alleged misconduct. <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir. 1988); <u>Chinchello v. Fenton</u>, 805 F.2d 126, 133 (3d Cir. 1986). Personal involvement by a defendant can be shown by alleging either personal direction or actual knowledge and acquiescence in a subordinate's actions. <u>Rode</u>, 845 F.2d at 1207.

a.     Eighth Amendment Claims

Plaintiff alleges Eighth Amendment violations by four defendants: Defendant Mazurkiewicz, Defendant Kwisnek, Defendant Berrier, and Defendant Armel. (ECF No. 6 ¶ 186, 188, 195, and 196, respectively).   The Eighth Amendment, enforced against the states through the Fourteenth Amendment, guarantees incarcerated persons humane conditions of confinement. In this regard, prison officials must ensure that inmates receive adequate food, clothing, shelter and medical care, and must "take reasonable measures to guarantee the safety of the inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994) (quoting Hudson v. Palmer, 468 U.S. 517, 526-27 (1984)).

A prison official violates the Eighth Amendment only when two requirements are met. The inmate must show that 1) he suffered a risk of "serious" harm; and 2) prison officials showed "deliberate indifference" to such risk.   Farmer, 511 U.S. at 834.   The first element is satisfied when the alleged "punishment" is "objectively sufficiently serious." Id.   In determining whether a prisoner has alleged a risk that is objectively serious, a court must consider not only the seriousness of the potential harm and the likelihood that the harm will actually occur, but evidence that unwilling exposure to that risk violates contemporary standards of decency.   In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate.  Helling v. McKinney, 509 U.S. 25, 35 (1993).

The second element, deliberate indifference, requires an inmate to show that the prison official had a sufficiently culpable state of mind.   The Supreme Court clarified this deliberate indifference standard in Farmer as follows:

> We reject petitioner's invitation to adopt an objective test for deliberate indifference.  We hold instead that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement *unless the official*

> *knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.* This approach comports best with the text of the Amendment as our cases have interpreted it. The Eighth Amendment does not outlaw cruel and unusual "conditions"; it outlaws cruel and unusual "punishments." An act or omission unaccompanied by knowledge of a significant risk of harm might well be something society wishes to discourage, and if harm does result society might well wish to assure compensation . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as an infliction of punishment.

<u>Farmer</u>, 511 U.S. at 837-38 (emphasis added).

The Court will first address the claims against Defendants Mazurkiewicz and Kwisnek, as those claims arise from events which occurred at SCI-Greensburg. Then, the Court will address the claims against Defendants Berrier and Armel, as those claims arise from events which occurred after Plaintiff was transferred to SCI-Fayette.

    i.   <u>Claims against Defendants Mazurkiewicz and Kwisnek</u>

Plaintiff's Eighth Amendment claims against Defendants Mazurkiewicz and Kwisnek are identical, and focus on Defendants' failure to grant his requests to be transferred to a facility which does not require inmates to traverse stairways.

The parties disagree as to whether Defendants had the authority to fulfill Plaintiff's request for a facility transfer. (*Compare* ECF No. 6 ¶ 186, 188; *with* ECF No. 85 page 12). The parties further disagree as to whether Defendants were actively advocating for Plaintiff's transfer. (ECF No. 97 page 2). However, drawing all reasonable inferences in the light most favorable to the non-moving party, as this Court must do when considering a Motion for Summary Judgment, Plaintiff's claim fails as a matter of law. <u>Batsushita</u>, 475 U.S. at 587. Even

if Defendants had the authority to transfer Plaintiff, their failure to do so does not rise to a constitutional violation.

Inmates do not have an inherent Eighth Amendment right to choose the facility of their confinement. Rivera v. Federal BOP, 197 F. App'x 169 (3d Cir. 2006) (holding that an inmate does not have the right to a prison that is closest to his mother's residence). A failure to transfer, therefore, only violates the Eighth Amendment when that failure rises to the level of "posing a substantial risk of serious harm." Prison officials must also have been aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and . . . must also draw that inference." Malles v. Lehigh Co., 639 F.Supp.2d 566, 579 (E.D. Pa. 2009) (citing Hamilton v. Leavy, 117 F.3d 742, 746 (3d Cir. 1997)).

Though the record indicates that Plaintiff advised Defendants as to the discomfort he experienced as a result of traversing the stairs at SCI Greensburg, (ECF No. 6 ¶ 186, 188), and that Defendants were on notice as to the interference which the stairways were creating with Plaintiff's meals and services, the summary judgment record is void of any evidence which demonstrates that Defendants could have drawn an inference that Plaintiff was at a "substantial risk of serious harm" prior to August 2011, the time when Plaintiff fell in the stairway. Hamilton, 117 F.3d at 746. On the contrary, despite Plaintiff's complaints of the difficulties associated with traversing the stairs, prison officials and medical personnel "noted that Mr. Wareham was ambulating with a steady gate using his cane." (ECF No. 85 page 8). "An Eighth Amendment violation may not be predicated on exposure to any risk of serious harm; the risk must be 'substantial'." Betts v. New Castle Youth Development Ctr., 621 F.3d 249, 258 (3d Cir. 2010) (emphasis added) (citing Helling, 509 U.S. at 33 (Eighth Amendment claim may be based

on a condition of confinement "that is sure or very likely to cause serious illness and needless suffering.")).

For the reasons set forth above, the Court finds that based on the summary judgment record there is no genuine dispute of material fact sufficient for a reasonable jury to find an Eighth Amendment violation by Defendants Kwisnek and Mazurkiewicz. Therefore, it is recommended that summary judgment be granted on Plaintiff's Eighth Amendment claim against Defendants Kwisnek, and Mazurkiewicz.

ii. Claims against Defendants Berrier and Armel

Plaintiff's Eighth Amendment claims against Defendants Berrier and Armel arise from the denial of Plaintiff's request for a double mattress in his cell. To state an Eighth Amendment violation in the context of medical treatment, an inmate must prove 1) that the plaintiff was suffering from a "serious medical need," and 2) prison officials were deliberately indifferent to the serious medical need. Estelle v. Gamble, 427 U.S. 97, 107 (1976). See also Montgomery v. Pinchak, 294 F.3d 492, 499 (3d Cir. 2002). Assuming, for the purposes of this Motion for Summary Judgment only, that Plaintiff's medical need was serious, Plaintiff's claim still fails under the second prong of the test.

Indeed, if Defendants Berrier and Armel had denied "an inmate from receiving recommended treatment," deliberate indifference may have been established. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 f.2d 326, 346 (3d Cir. 1987). However, as this Court noted in connection with the Medical Defendants' motion to dismiss, Dr. Herbik of SCI-Fayette, "almost eleven (11) years after the authorization [for a double mattress] was initially given, examined Plaintiff and determined that he no longer needed a double mattress." (ECF No. 47 page 15, citing ECF No. 6 ¶ 109). Defendants Berrier and Armel denied the double mattress

in conformity with the determination of Dr. Herbik that Plaintiff no longer needed a double mattress.

> Absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment *scienter* requirement of deliberate indifference.

Spruill v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004).

Dr. Herbik determined that Plaintiff was no longer in need of a double mattress, and Defendants Berrier and Armel's denial of Plaintiff's request comported with that determination. Accordingly, it is recommended that summary judgment be granted to Defendants Berrier and Armel.

b.    Fourteenth Amendment Claim

Plaintiff also brings a substantive due process claim under the Fourteenth Amendment against the DOC, Mazurkiewicz and Kwisnek arguing that Defendants "violated his right to be free from state created danger as applied to him through the Fourteenth Amendment." (ECF No. 6 ¶ 185, 188, 189). To the extent Plaintiff is claiming a Fourteenth Amendment violation based on the same conduct as his Eighth Amendment claim was based upon - i.e., Defendants' refusal to transfer him resulted in his fall at SCI Greensburg - the Court finds that the claim is barred by the "explicit source rule" promulgated by the United States Supreme Court in Albright v. Oliver, 510 U.S. 266, 273 (1994). See also Betts, 621 F.3d at 261 ("Betts's claims concern his conditions of confinement and an alleged failure by Defendants to ensure his safety. Because these allegations fit squarely within the Eighth Amendment's prohibition on cruel and unusual punishment, we hold that the more-specific-provision rule forecloses Betts's substantive due process claims.")

However, assuming *arguendo* that this claim is not barred by the explicit source rule, the Court finds that the claim is without merit as the summary judgment record fails to establish any of the required elements of a state-created danger claim. To prevail on a state-created danger claim, a plaintiff must prove the following four elements:

> (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions . . . (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen that rendered the citizen more vulnerable to danger than had the state not acted at all.

Sanford v. Stiles, 456 F.3d 298, 303-05 (3d Cir. 2006) (quoting Bright v. Westmoreland County, 443 F.3d 276, 281 (3d Cir. 2006)).

The Court finds that Plaintiff's claim fails under the first, second, and fourth prongs of the "state-created danger" analyses.[3] The summary judgment record does not demonstrate that Plaintiff's fall in August of 2011 was foreseeable and fairly direct. While Plaintiff had complained of difficulties in traversing the stairs, the summary judgment evidence reflects that prison officials and medical personnel had noted that Plaintiff was ambulating with a steady gate using a cane. Thus, Plaintiff has failed to meet the first prong of the analysis.

Next, assuming, however, *arguendo*, that the foreseeability prong is satisfied, Plaintiff's claim fails to adequately show that a reasonable jury could find that Defendants "acted with a degree of culpability that shocks the conscience." Id. Like the traditional analysis for Eighth Amendment violations as seen in Farmer, the "state-created danger" analysis requires "deliberate

---

[3] The third prong of the analysis is met as it applies to situations where the plaintiff is subject to the custodial care of the state. It is not disputed that Plaintiff was in the custody of the DOC during the events giving rise to this lawsuit.

indifference, or perhaps gross negligence or recklessness." <u>Sanford,</u> 456 F.3d at 306. However, under a state-created danger theory, "the state actor's behavior must always shock the conscience." <u>Id.</u> at 310. The question is not whether Defendants were negligent, but whether their negligence was egregious enough to shock the conscience. <u>See Id.</u> at 311 ("Mere negligence is not enough to shock the conscience."). Plaintiff's risk of falling and suffering severe harm was not considered by Defendants to be particularly great (ECF No. 85 page 8). Plaintiff's requests for transfer only alleged hardship in attaining entitlements like meals and exercise, and did not suggest a significant risk of falling. (ECF No. 6 ¶ 188). Further, the parties agree that Defendants were responsive to Plaintiff's request for transfer, even if they disagree as to whether the transfer was pending at the time of his fall in August, 2011. (ECF No. 6 ¶ 43, 48, 62). <u>Sanford</u>, 456 F.3d at 311 (using evidence that prison officials "did not simply ignore the [evidence of risk]. To the contrary, she promptly spoke with [the plaintiff], at which point she made a 'conscious judgment' that [the risk was low].") The summary judgment record is void of any evidence that demonstrates that Defendants acted with a degree of culpability that shocks the conscience. Thus, Plaintiff has also failed to meet the second prong of the state-created danger analysis.

Finally, the Court finds that the fourth prong of the analysis has not been met as it requires a showing that the state actors used their authority to <u>create</u> an opportunity for a third party to harm the Plaintiff. State actors must behave in a way as to make a plaintiff more susceptible to harm. It is not enough for state actors to have knowledge of the risk of harm or to remedy inadequately a harm. Rather, they must "create" the opportunity for the harm to strike.

The summary judgment record does not demonstrate that Defendants <u>created</u> the opportunity for Plaintiff to fall. In cases in which our appellate court has found the fourth

element satisfied, the harm that the plaintiffs suffered was directly traceable to the intervention of state actors.  See  Estate of Smith v. Marasco, 318 F.3d 497 (3d Cir. 2003); Kneipp v. Tedder, 95 F.3d 1199, 1201 (3d Cir. 1996).   In this case, Plaintiff's allegations are distinct from those in Estate of Smith and Kneipp.   In both those cases, the state actors *increased* the plaintiff's vulnerability to harm.  Here, the summary judgment record does not reflect that Defendants acted in such a way as to put Plaintiff in a worse situation.

For these reasons, the Court finds that the summary judgment record does not establish facts sufficient to establish a state-created danger claim and recommends that this claim be dismissed.

2.      Claims brought pursuant to the Americans with Disabilities Act ("ADA")

Plaintiff brings a claim against the DOC for violation of his rights under Title II of the ADA.  The ADA is applicable only to "public entities," such as state prisons.  See Pennsylvania Dep't of Corrections v. Yeskey, 524 U.S. 206, 210 (1998); United States v. Georgia, 546 U.S. 151, 154 (2006 ).   The ADA provides, in relevant part, that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.

The Supreme Court of the United States has held that Title II of the ADA validly abrogates sovereign immunity as to state conduct that actually violates the Constitution.  United States v. Georgia, 546 U.S. 151, 159 (2006).  To state a valid ADA claim, a plaintiff must show that  "(1) he is a qualified individual (2) with a disability, (3) he was excluded from participation in or denied the benefits of the services, programs, or activities of a public entity, or was

subjected to discrimination by any such entity, (4) by reason of his disability." <u>Bowers v. Nat'l Collegiate Athletic Ass'n,</u> 475 F.3d 524, 553 n.32 (3d Cir. 2007).

A disability, as defined by the ADA, is "a physical or mental impairment that substantially limits one or more major life activities of such individual; [or] a record of such an impairment." 42 U.S.C. § 12102(1). The ADA specifically mentions "walking" as a "major life activity" for the purposes of the statute. § 12102(2)(A).

The summary judgment medical record evidence is permeated with evidence of a substantial impairment of Plaintiff's ability to walk,[4] (see ECF Nos. 6, 85, 87-1, 96, 97). The Court finds, therefore, that a reasonable jury could find that Plaintiff has a disability as contemplated by the ADA.

Next, Plaintiff must show that he was otherwise qualified to receive the benefits of the public services, programs, or activities. A qualified individual with a disability is "an individual with a disability who, with or without reasonable modifications . . . meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131. Courts have construed "the benefits of a program or activity" to include the general rehabilitative and correctional services of state prisons, and have therefore required prisons to make "reasonable accommodations" for an inmate's physical disabilities in their day-to-day operations in order to comply with the mandates of the ADA. <u>Muhammad v. N.J. Dep't of Corr.,</u> 645 F. Supp. 2d 299, 314 (D.N.J. 2008) (denying a Department of Corrections motion for summary judgment because a reasonable jury could find

---

[4] Plaintiff alleges throughout his Complaint (ECF No. 6) that his ability to walk is significantly impeded by his disability. Defendants agree that Plaintiff's ambulation was significantly impaired (ECF No. 85, pages 3-10). The Court notes that although inclusion on the "Inmates with Disabilities List" does not mean, alone, that Plaintiff "met the legal criteria for 'disabled' under the ADA," both parties agree that his condition significantly limited a major life function: namely walking.

that failure to provide a reasonable accommodation for an inmate with a disability may be a violation of the ADA).

Plaintiff alleges in part, that as a result of the DOC's conduct, he was deprived of a number of meals, exercise, and recreation services to which he was entitled by virtue of his membership in the inmate population at SCI-Greensburg (ECF No. 6, ¶¶ 32, 36, 46, 69). The DOC does not deny that Plaintiff was entitled to meals, nor does it report any reason why he was not qualified to participate in other prison services, such as exercise and access to the yard. The Court finds that a reasonable jury could find that Plaintiff is a "qualified individual" as contemplated by the ADA.

Third, Plaintiff must show that he was "excluded from participation in or denied the benefits of the services, programs, or activities of a public entity." Bowers, 475 F. 3d at 553 n. 32. Plaintiff alleges that he "missed meals in the chow hall and avoided going to the yard at times rather than suffering through the pain and difficulty of the stairways." (ECF No. 6 ¶ 32; ECF No. 97 page 4). "Plaintiff missed some meals he otherwise would have eaten. But the significant amount of additional times that he climbed up and down the stairways for meals soon rendered [him] . . . very weak." (ECF No. 6 ¶ 69). On a number of occasions, Plaintiff was placed on administrative "cell feed." (ECF No. 85 pages 5 and 7; ECF No. 6 ¶ 66). However, cell feed was repeatedly removed, on at least one occasion *because* Plaintiff walked in order to "complain about not receiving a tray in his cell. . . . After that incident, the PA and Dr. Mollura discontinued the cell feed order." (ECF No. 85 page 8). Despite the DOC's suggestion that the cell feed removal decision was made in part because "[t]he RN Supervisor noted that Mr. Wareham was ambulating with a steady gate using his cane,"[5] the Court finds, based on the

---

[5] The Court notes that the ADA specifies that "[t]he determination of whether an impairment

summary judgment record, that a reasonable jury could find that Plaintiff was either excluded from participation in or denied the benefits of certain services.

Finally, the Court finds that the summary judgment record is sufficient for a reasonable jury to find that Plaintiff was denied the benefits of services "by reason of his disability." Bowers, 475 F. 3d at 553 n. 32. As noted above, Plaintiff alleges that he "missed some meals and some yard-outs that he would have went to had it not been for the pain and difficulty he would have had to endure from the double flights of long and steep stairways." (ECF No. 97 page 4-5). Though the DOC placed Plaintiff on cell feed as an accommodation, Plaintiff was removed from cell feed on numerous occasions (ECF No. 6, ¶ 72, 67, 63; ECF No. 85 page 8). Plaintiff alleges that it was when cell feed was not administered that he missed meals and services (ECF No. 6 ¶ 69). A reasonable jury could conclude that cell feed is a reasonable modification or accommodation, and that the DOC, by failing to provide such reasonable accommodations, denied Plaintiff meals and other entitlements. Muhammad v. N.J. Dep't of Corr., 645 F. Supp. 2d 299, 314 (D.N.J. 2008) (denying a Department of Corrections motion for summary judgment because a reasonable jury could find that failure to provide a reasonable accommodation for an inmate with a disability may be a violation of the ADA).

A jury could further find that on at least a few occasions, the Plaintiff was *denied* the reasonable accommodation of "cell feed," and was therefore excluded from meals and other entitlements. On at least one occasion, revocation of cell feed was the direct result of Plaintiff being compelled to physically walk to the dietary in order to complain about not having his meal

---

substantially limits a major life activity shall be made without regard to the ameliorative effects of mitigating measures." § 12102. Plaintiff's successful use of a cane or other similar ameliorative measures would not exclude him from the protected class under the ADA.

delivered (ECF No. 85 page 8). Mr. Mazurkiewicz, in an Appeal Response dated September 22, 2011, told Plaintiff that

> You [Plaintiff] give every appearance of trying to place us into a 'no win situation' with your behavior and medical conditions. When we attempted to deliver your meals because of mobility, you insisted in walking to other parts of the institution and would complain about your medical status.

(ECF No. 87-1 Exhibit 9 page 202). Despite Mr. Mazurkiewicz's reasoning, a jury could still find that cell feed would have been a reasonable accommodation for Plaintiff, notwithstanding his trip to the dietary to make a complaint, or his traversing the stairs to gain access to the yard.

> It's true that I sometimes go through the pain and difficulty of walking and climbing up and down the stairways to go to the yard and gym. But, unlike the cell feed cart that comes to the cell block anyway, there is no other way for me to go the yard or gym . . . I go to the gym for self physical therapy. I use the rowing machine and stationary bicycle for range of motion and to fend off the atrophy and to strengthen my lower extremity as best I can.

(Plaintiff's letter to Dr. Mollura and Ms. Kwisnek, July 18, 2011. ECF No. 87-1 Exhibit 13, page 221).

Failure to afford Plaintiff with a reasonable accommodation in order to provide him with meals is sufficient to state a claim under Title II of the ADA. *See* <u>Bowers</u>, 475 F.3d at 553. *See also*, <u>Henrietta D. v. Bloomberg</u>, 331 F.3d 261, 277 (2d Cir. 2003) (finding that "obstacles to access . . . prevent[ing] [plaintiffs] from accessing public services insofar as the plaintiffs face challenges that make it impossible for them meaningfully to access services" is sufficient to state a claim under the ADA).

For these reasons, the Court finds that Plaintiff has stated a valid ADA claim based on the record that is sufficient to survive a motion for summary judgment.

## III.    CONCLUSION

For all of the foregoing reasons, it is recommended that the Motion for Summary Judgment filed by the DOC Defendants be granted in part and denied in part.  It is recommended that Summary Judgment be granted to the DOC Defendants on Plaintiff's Eighth and Fourteenth Amendment claims.  It is further recommended that Summary Judgment be denied on Plaintiff's ADA claims.

Pursuant to the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Civil Rules, the parties are allowed until **July 10, 2014** to file objections. Failure to timely file objections will constitute a waiver of any appellate rights.  <u>Brightwell v. Lehman</u>, 637 F.3d 187, 193 n. 7 (3d Cir. 3011).  Any party opposing objections may file their objections within fourteen (14) days thereafter in accordance with Local Civil Rule 72.


Dated: June 23, 2014

<u>s/ *Cynthia Reed Eddy*</u>
Cynthia Reed Eddy
United States Magistrate Judge

cc:    JOSEPH WAREHAM
       108 James Avenue
       Interlachen, FL 32148-4104

       Mary Lynch Friedline
       Office of Attorney General
       Email: mfriedline@attorneygeneral.gov


       J. Eric Barchiesi
       Eisenberg & Torisky
       Email: eric.barchiesi@aig.com